IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, ET AL | : <br> : <br> : <br> : |
| v. | : <br> : Civil No. CCB-03-3408 |
| PORTER HAYDEN COMPANY | : <br> : <br> : |

**MEMORANDUM**

This memorandum addresses a motion for partial summary judgment filed by National Union Fire Insurance Company of Pittsburgh, PA and American Home Assurance Company ("the Insurers"). (ECF No. 201.) In their motion, the Insurers argue they are obligated to indemnify the Porter Hayden Bodily Injury Trust ("PHBIT") only for the actual sums which the Trust pays out to claimants. In other words, the Insurers seek a declaration from this court that the amount of their indemnification obligation should be substantially reduced from the full value of the claims to the specific sums which the PHBIT is able to distribute to claimants. Porter Hayden, by contrast, contends it is entitled to indemnification in the gross amount of allowed value of claims to the Trust. For the reasons that follow, this court will deny the Insurers' motion for partial summary judgment and find that the measure of the Insurers' indemnification liability is not limited to the percentage paid out to the claimants.

**Discussion**

At issue is language in the Insurers' policies stating that "[t]he company will pay on behalf of the Insured all sums which the Insured *shall become legally obligated to pay* as damages because of . . . bodily injury . . . to which this insurance applies." *See* NUF Insurance

1

Policy, ECF No. 132, Exh. A-1, p. 4, ¶1 (emphasis added).  The Insurers argue that the PHBIT, which was created pursuant to 11 U.S.C. § 524(g), is "legally obligated" to pay only the amount which claimants *recover* – that is, the gross claim amount reduced by the "payment percentage."[1] Therefore, the Insurers argue, their indemnification obligation is limited to a small fraction of the amount claimed.[2]  In support of their argument, the Insurers cite an opinion of the California Court of Appeal for the Second District, *Fuller-Austin Insulation Co. v. Highlands Ins. Co.*, 135 Cal. App. 4th 958 (2006), imposing a limited indemnity obligation on insurers of a § 524(g) asbestos trust.

     Porter Hayden maintains that the Insurers are liable to indemnify the Trust for the full value of claims made to it.  They contend the Insurers' position is inconsistent with a previous opinion in this case, in which Judge Davis held that the Insurers are liable to indemnify the PHBIT irrespective of the insolvency of the Porter Hayden Company.  *National Union Fire Ins. v. Porter Hayden Co.*, 408 B.R. 66, 71-73 (D.Md. 2009) (ECF No. 143).  According to Porter Hayden, allowing the Insurers to limit their indemnity obligations would contravene Maryland law holding insurers accountable regardless of the insolvency of the insured.  *See* Md. Code Ann., Ins. § 19-102(b).  Moreover, Porter Hayden notes that the current PHBIT payment percentage reflects an ongoing reduction in the Trust's assets, which has resulted in part from litigation costs.  Thus, Porter Hayden claims that reducing the Insurers' indemnity obligation in

---

[1] The payment percentage is a pro rata share of the value of the claims to the asbestos trust.  According to the Porter Hayden Trust Distribution Plan (TDP), the payment percentage is determined based on "current estimates of the number, types, and values of present and future Asbestos Bodily Injury Claims, the value of the assets then available to the Trust for their payment, all anticipated administrative and legal expenses, and any other material matters that are reasonably likely to affect the sufficiency of funds to pay a comparable percentage of full liquidation value to all holders of Asbestos Bodily Injury Claims." (Sec. 4.2, ECF No. 201, Exh. 3).  The TPD provides that the payment percentage will be re-assessed "[n]o less frequently than once every three (3) years."  (*Id.*)

[2] The current PHBIT payment percentage is 1.8% of the full liquidated value. (ECF No. 201, p. 10.)

proportion to the Trust's assets would incentivize the Insurers to persist in unnecessary litigation in order to exhaust Trust assets.

This court agrees with Porter Hayden that proportionately reducing the Insurers' liability would be inconsistent with Judge Davis's July 2009 opinion. *See National Union Fire,* 408 B.R. 66. At that stage in this litigation, the Insurers argued they were not required to indemnify the PHBIT because the insured, Porter Hayden Company, had entered § 524(g) bankruptcy and was no longer "legally obligated" to pay claimants. *Id.* at 70. The court rejected the Insurers' interpretation of the policy language, emphasizing that an insurer may not shirk its indemnification obligations on account of the "financial misfortunes of the insured." *Id.* at 73, citing *Matter of Edgeworth*, 993 F.2d 51, 54 (5th Cir. 1993) (internal quotations omitted). The court held that the scope of the term "legal[] obligat[ion]" must be interpreted broadly in accordance with Maryland's mandate that the insolvency of the insured may not release the insurer from liability. *Id.*

As Judge Davis noted, Maryland courts have interpreted the meaning of the term "legal obligation" as it relates to insurers' indemnity obligations. In so doing, the courts have addressed and rejected insurers' arguments that their indemnification obligations apply only at the time of – and for the amount of – a final judgment against the bankrupt insured. Rather, the courts have adopted a more expansive interpretation of the term, holding that an insured is "legally obligated to pay" a sum if it "ultimately face[s] the task" of paying that amount. *Bausch & Lomb Inc. v. Utica Mut. Ins. Co.,* 330 Md. 758, 780 (1993). In other words, the measure of a legal obligation is not the final judgment against the insured or a specific payout by the insured. Instead, "[t]he term 'legally liable' to pay damages depends not upon when, and if, a judicial determination is made, but, generally, upon the creation of circumstances by and/or between

3

parties, whereby the parties, or one or the other of them, can enforce rights through legal process. Parties often become legally obligated ('liable') to pay by way of contract, *i.e.,* construction contracts, leases, insurance contracts, etc., or by committing tortious acts." *Megonnell v. United Services Auto. Ass'n.*, 368 Md. 633, 645 (2002). Here, Porter Hayden's legal obligation was created by, and is defined by, its tortious acts, not its payments to claimants. Moreover, although the PHBIT has established a payment percentage to settle claims, the payment percentage is variable, and there is no question that the Trust "ultimately faces the task" of paying the full amount of the claims to the extent of the assets that are or become available to do so.

In support of their summary judgment motion, the Insurers cite *Fuller-Austin*, in which the California Court of Appeal for the Second District overturned a trial court's decision to hold an insurer accountable for the full value of each claim to the insured asbestos trust. Instead, the court held the insurer was liable only for "the payment sum percentage amount." 135 Cal. App. 4th at 998. This case, of course, does not have precedential value. Moreover, the case is distinguishable on the facts. In reaching its conclusion, the *Fuller-Austin* court emphasized that "an asbestos claimant would not receive any greater protection by an order requiring appellants to indemnify Fuller-Austin in the ALV [allowed liquidation value] amount of each claim, as payment would not alter the Plan's payment provisions dictating that each claimant receives only a payment sum percentage . . . ." *Id.* Indeed, *Fuller-Austin* cited and distinguished case law suggesting that "an insurer should not be permitted to limit its liability on the basis of an insolvent insured's inability to pay" on the grounds that Fuller-Austin claimants "w[ould] receive the same amount regardless of whether appellants are obliged to indemnify Fuller-Austin in the ALV amount or the payment sum percentage amount." *Id.*

Unlike the terms apparently governing the Fuller-Austin trust, the Porter Hayden TDPs specifically provide for an increase in payment to claimants in the event that the Trust collects a significant sum from its insurers. The TDPs state that:

> [I]f the Trust successfully resolves an insurance coverage dispute or otherwise receives a substantial recovery of insurance proceeds on behalf of the Trust, the Trust shall use those proceeds first to maintain the Payment Percentage then in effect. If the insurance recovery exceeds the amount estimated to be reasonably necessary to maintain the Payment Percentage then in effect, the Trust, with the consent of the Trust Advisory Committee and the Legal Representative, shall adjust the Payment Percentage upward to reflect the increase in available assets in the Trust, and shall also make supplemental payments to Claimants who previously liquidated their Claims against the Trust and received payments based on a lower Payment percentage.

§ 4.2, ECF No. 201, Exh. 3. Therefore, *Fuller-Austin*'s heavy emphasis on the fact that greater insurance recovery would not protect or benefit claimants renders its holding inapposite.[3]

This court instead adopts the approach of the Seventh Circuit in holding insurers potentially accountable to the insured's bankruptcy trust for the full measure of asbestos victims' claims. *See UNR Indus., Inc. v. Cont'l Cas. Co.*, 942 F.2d 1101 (7th Cir. 1991).[4] Again, in *UNR Industries*, the insurer claimed it was required to indemnify the trust only for the sum "the Trust *actually* pa[id] to asbestos victims with valid claims." *Id*. at 1105 (emphasis added). The Seventh Circuit reversed the district court's initial determination that indemnification should be reduced by the payment percentage, finding that such an approach "threatens to confer a windfall on CAN [the insurer] at the asbestos victims' expense." *Id.*

---

[3] The Insurers argue that the TDPs do not *mandate* an increase in the payment percentage in the event of recovery of insurance proceeds because the language of the TDPs conditions such an increase on the consent of the Trust Advisory Committee and the Trust's legal representative. (ECF No. 220, p. 5, n.1.) The court notes, however, that the TDPs clearly direct the Trust to increase the payment percentage in response to insurance recovery. Whether that increase is automatic is not consequential to this analysis.

[4] The parties entered into a stipulation before the Bankruptcy Court in March 2006. *See* Bankruptcy Insurance Stipulation, 02-bk-54152, Dkt. No. 965. The Bankruptcy Insurance Stipulation expressly provided that neither court approval of the plan and plan documents, nor the confirmation order, could be relied on for certain purposes, despite the holdings of *Fuller-Austin* (at the trial level) or *UNR Industries*. That stipulation, however, does not preclude this court from determining what approach is appropriate under law.

> The reason for the potential windfall is that UNR [the bankrupt insured] paid the Trust only a portion of the asbestos victims' actual damages in the bankruptcy proceedings. This discounting of the asbestos victims' damages had nothing to do with the merits of their claims. The discounting merely reflected the amount of UNR's assets that the asbestos victims could reach. CNA may profit greatly from UNR's bankruptcy if its obligations are based on the arbitrarily discounted amount that the asbestos victims actually receive from the Trust.

*Id.*[5] The Seventh Circuit's holding in *UNR Industries* preceded the enactment of 11 U.S.C. § 524(g), but has been followed in the context of § 524(g) asbestos trusts. *See ARTRA 524(g) Asbestos Trust v. Fairmont Premier Ins. Co.*, 2011 WL 4684356 *2 (N.D. Ill. Sept. 30, 2011) (holding that the insurer's obligation to indemnify the insured § 524(g) asbestos trust would not be limited by the "lower percentage paid to a claimant because of the lack of sufficient assets").[6]

The same result is compelled here. As noted, Maryland law requires that "[e]ach liability insurance policy issued in the State shall provide that . . . the bankruptcy or insolvency of the insured does not release the insurer from liability." Md. Code Ann. Ins. § 19-902(b)(1). Indeed, National Union's policies comply with this mandate. *See* NUF Insurance Policy Conditions, ECF No. 132, Exh. A-1, p. 12, ¶5 ("Bankruptcy or insolvency of the insured or of the insured's estate shall not relieve the company of its obligations hereunder."). The Insurers claim this language establishes the *fact* of their indemnification obligation, but not the *extent*. However, the payment percentage is a reflection of the assets in the PHBIT, which are limited by Porter Hayden's insolvency. Ultimately, this court finds that dramatically reducing the Insurers' obligation by correlating it with the Trust's payment percentage would be a form of releasing the insurer from liability on account of the insolvency of the insured.

---

[5] In reaching its conclusion, the Seventh Circuit rightly noted that "[t]he point of [liability] insurance policies . . . [is] to eliminate the very solvency risk" that would lead to a settlement limited by the amount of the insured's assets." *Id.* (quoting *Harbor Ins.v. Continental Bank,* 922 F.2d 357, 368 (7th Cir. 1990)).
[6] Unpublished cases are not binding precedent and are cited for their reasoning only.

6

Finally, the Plan of Reorganization for the Porter Hayden Company, which was confirmed by the Bankruptcy Court and approved by this court, specifically states that is not intended to release Porter Hayden's insurers from liability. *See* Third Amended, Second Modified Plan of Reorganization, § 9.1, ECF No. 132, Exh. D ("[T]he Plan shall not discharge or release any claim or demand of the Debtor, Reorganized Debtor, or any Asbestos Bodily Injury Claimant against any Asbestos Insurance Company . . . ."). The Bankruptcy Code is not intended to enable insurers to evade their indemnity obligations. The notion that bankruptcy of the insured should not accrue to the benefit of the insurers is well-established. "[A] party who is derivatively liable for the indebtedness of the debtor, such as its insurer, remains so after confirmation and the debtor's discharge." *In re Jason Pharmaceuticals, Inc.,* 224 B.R. 315, 322 (Bankr. D.Md. 1998); *see also Tucker v. Am. Int'l Group, Inc.*, 745 F. Supp. 2d 53, 65 (D. Conn. 2010) (noting that an "insurance company should not be entitled to gain a benefit that was not intended or in any way computed within the rate charged for its policy") (internal quotations omitted); *In re Coho Res., Inc.*, 345 F.3d 338, 343 (5th Cir. 2003) (affirming that "it makes no sense to allow an insurer to escape coverage for injuries caused by its insured merely because the insured receives a bankruptcy discharge") (internal quotations omitted); *In re Jet Florida Sys., Inc.*, 883 F.2d 970, 974-76 (11th Cir. 1989) (collecting cases holding that insurance companies shall not be unjustly enriched by escaping liability on account of the insolvency of the insured); *In re Honosky*, 6 B.R. 667, 669 (Bankr. S.D.W.Va. 1980) ("the Bankruptcy Code was [not] intended to bestow such a benefit upon insurance companies").

For the reasons stated above, the Insurers' motion for partial summary judgment will be denied. A separate order follows.


Date:  March 6, 2012                                          /s/
                                                      Catherine C. Blake
                                                      United States District Judge

8