IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., et al. | * * * * * | |
| v. | * | Civil Nos. CCB-03-3414, CCB-03-3408 |
| PORTER HAYDEN COMPANY, et al. | * * * * * | |

******

# MEMORANDUM

This decade old case involves Porter Hayden Company's ("Porter Hayden") claim that National Union Fire Insurance Company of Pittsburgh, Pa. and American Home Assurance Company (collectively, "the Insurers") failed to indemnify Porter Hayden for asbestos-related liability claims. Now pending before the court is the Insurers' motion for partial summary judgment on horizontal exhaustion. The Insurers seek a legal ruling that Maryland's horizontal exhaustion rule requires all available primary insurance to be exhausted before any excess insurer may be required to pay for the loss.[1] Also pending is Porter Hayden's motion for summary judgment. The issues in this case have been fully briefed, and oral argument was held on November 20, 2013. For the reasons stated below, the Insurers' motion for partial summary judgment on horizontal exhaustion will be granted in part and denied in part, and Porter

---

[1] "A primary insurer that properly pays its policy limits is said to have 'exhausted' its limits." *Mayor and City Council of Baltimore v. Utica Mut. Ins. Co.*, 145 Md. App. 256, 314, 802 A.2d 1070, 1105 (2002) (citation and internal quotation marks omitted); *see also Kurtz v. Erie Ins. Exch.*, 157 Md. App. 143, 150, 849 A.2d 1050, 1055 (2004) ("In insurance parlance, exhaustion contemplates the complete use of a primary liability policy before resort to any secondary or excess policy.").

1

Hayden's motion, as it pertains to Maryland law governing exhaustion, will be granted in part and denied in part.[2]

## BACKGROUND

Porter Hayden's coverage program included both primary and excess liability insurance. National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") issued two primary policies to Porter Hayden, effective April 1, 1984, to April 1, 1986. (*See* Policy No. 1524165, ECF No. 344-2; Policy No. 1940385, ECF No. 344-3.) Operations claims and completed operations claims were subject to different limits under Porter Hayden's primary insurance policies: In particular, some operations claims were not subject to an aggregate limit, while completed operations claims were subject to such a limit. (*See* Insurers' Mot. Summ. J., ECF No. 338-1, at 7; *see also* Porter Hayden's Mot. Summ. J., ECF No. 344-1, at 9 n.3; Insurers' Opp. to Porter Hayden's Mot. Summ. J., ECF No. 350, at 24.)[3] Turning to Porter Hayden's excess insurance coverage, National Union issued two excess insurance policies, effective July 11, 1976, to January 1, 1978. (*See* Policy No. 1186636, ECF No. 338-15; Policy No. 1186790, ECF No. 338-16.) American Home Assurance Company ("American Home") also issued an excess insurance policy to Porter Hayden, effective July 11, 1975, to July 11, 1976. (*See* Policy No. 2751098, ECF No. 338-14.)

---

[2] In this Memorandum, the court deals only with the part of Porter Hayden's motion regarding Maryland law governing exhaustion. The court does not yet address Porter Hayden's request for a declaration that "the Porter Hayden Bodily Injury Trust ("Trust") pays claimants reasonable values to resolve claims and the Insurers have waived their right to object to settlements paid by the Trust." (Porter Hayden's Mot. Summ. J., ECF No. 344-1, at 1.) The court also does not yet address Porter Hayden's valuation of the primary and excess insurance policies.

[3] The court does not endeavor at this time to classify claims as either operations claims or completed operations claims.

**STANDARD**

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphasis added). Whether a fact is material depends upon the substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must view the evidence in the light most favorable to the nonmovant and draw all justifiable inferences in his favor. *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citation omitted); *see also Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor and City Council of Baltimore*, 721 F.3d 264, 283 (4th Cir. 2013) (citation omitted). At the same time, the court must not yield its obligation "to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (citation and internal quotation marks omitted).

**ANALYSIS**

Pursuant to the "continuous trigger theory," insurance coverage for asbestos-related bodily injury claims is triggered "from the date of initial exposure [to asbestos fibers] to the date of manifestation [of asbestos-related disease]." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Porter Hayden Co.*, 331 B.R. 652, 659, 664 (D. Md. 2005). To determine how coverage is allocated among triggered policies, Maryland has "adopted the theory of a pro rata allocation by

time on the risk." *See In re Wallace & Gale Co.*, 385 F.3d 820, 830 (4th Cir. 2004); *see also Porter Hayden Co.*, 331 B.R. at 668. Under the theory of pro rata allocation, an insurer's liability is limited to "that period of time it was on the risk compared to the *entire* period during which damages occurred." *Mayor and City Council of Baltimore v. Utica Mut. Ins. Co.*, 145 Md. App. 256, 313, 802 A.2d 1070, 1104 (2002) (citation and internal quotation marks omitted). In other words, "each insurer is liable only for its proportionate share of the total liability." *Porter Hayden Co.*, 331 B.R. at 665.

Complicating the task of pro rata allocation is "the question of exhaustion, or [the] order in which a court will decide to [collect from, or deplete the indemnification liabilities of] the policies at issue." *Utica Mut.*, 145 Md. App. at 314, 802 A.2d at 1104 (citation and internal quotation marks omitted). In *Mayor and City Council of Baltimore v. Utica Mut. Ins. Co.*, the Maryland Court of Special Appeals explained:

> One of the most hotly contested issues in continuous loss cases, often referred to by insurers as "long-tail claims," is whether an insured is obligated to exhaust its liability coverage "vertically" or "horizontally." This issue arises when several primary policies or lower level excess policies are triggered, and a court must determine whether the limits of the underlying policies for one year (vertical exhaustion) or all years (horizontal exhaustion) must be exhausted before a particular excess policy must pay.

*Id.* at 314–15, 802 A.2d at 1105 (citation omitted). The court went on to "hold that 'horizontal exhaustion' is the best fit for the realities of cases of this nature." *Id.* at 315, 802 A.2d at 1105.[4] Thus, the horizontal exhaustion rule determined the allocation of liability among primary and excess liability insurers. *See id.* at 314–16, 802 A.2d at 1104–05. In particular, the court stated: "The exhaustion of all of the primary policies *on the risk* should occur prior to the requirement that any excess policy respond to the loss, unless the language of the excess policy states that (1)

---

[4] The court agrees with the Insurers that Maryland has adopted the horizontal exhaustion rule and, to that extent, the Insurers' motion for summary judgment will be granted.

it is excess insurance over a particular, specific, primary policy, and (2) will be triggered when that discrete policy is exhausted." *Id.* at 315, 802 A.2d at 1105 (emphasis added).

The court agrees with Porter Hayden that the horizontal exhaustion rule must be understood in the context of Maryland's adoption of the theory of pro rata allocation. Accordingly, the court rejects the Insurers' argument that, because some operations claims were not subject to an aggregate limit, this means that some primary insurance policies were not exhausted, and therefore, no excess insurance may be triggered. The Insurers' argument rests on the notion that primary policies covering operations claims must pay more than their pro rata share. (*See* 11/20/13 Hr'g Tr. at 33:18–34:8; *see also id.* at 42:6–16.) The Insurers' argument also implies that excess insurance may never be available, because some operations claims were not subject to an aggregate limit under Porter Hayden's primary insurance. But this notion defies *Utica Mut.*, which recognized that "some primary policies that provide less coverage will be exhausted sooner than others, and their excess insurers, if any, would accordingly have to respond at an earlier point." 145 Md. App. at 315, 802 A.2d at 1105. Therefore, the court does not agree with the Insurers' interpretation of the horizontal exhaustion rule and, to that extent, their motion for summary judgment will be denied.

The court's interpretation of the horizontal exhaustion rule follows *Utica Mutual*. In the course of allocating damages pursuant to the pro rata allocation method, certain years of primary insurance coverage may prove to be exhausted, while other years of primary insurance coverage may not be. But this does not necessarily mean excess insurance is not available. If the primary insurance as to a particular year on the risk has been exhausted, then an excess policy applicable to that year must pay its pro rata share. As for operations claims not subject to an aggregate limit, excess insurance for those claims may not be available for a particular year or years due to

lack of exhaustion. Where primary coverage has been exhausted, however, excess insurance may be required to pay for those losses. This interpretation avoids the problem of requiring an insurer to pay more than its pro rata share. It is also consistent with the recognition of *Utica Mut.* that certain primary policies may be exhausted sooner than others and, as a result, certain excess policies respond sooner than others. Accordingly, Porter Hayden's motion for summary judgment will be granted in part, insofar as its interpretation of the horizontal exhaustion rule matches that of the court, and otherwise denied.[5]

## CONCLUSION

For the reasons stated above, the Insurers' motion for partial summary judgment on horizontal exhaustion will be granted in part, as to Maryland's adoption of the horizontal exhaustion rule, and otherwise denied. Porter Hayden's motion, as it pertains to the law governing exhaustion, will be granted in part, insofar as its interpretation of the horizontal exhaustion rule aligns with that of the court, and otherwise denied. A separate order follows.

January 2, 2014　　　　　　　　　　　　　　　　　　　／s／
Date　　　　　　　　　　　　　　　　　　　　　　Catherine C. Blake
　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge

---

[5] In addition to disagreeing over Maryland law governing exhaustion, the parties disagree over whether Porter Hayden's excess policies require all primary insurance to be exhausted before excess insurance may be triggered, or whether they provide for excess insurance over particular primary policies. The court does not at this time decipher the meaning of Porter Hayden's excess insurance policies and whether they endeavor to deviate from Maryland's horizontal exhaustion rule.